UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Alicia Dunlap and
Aliou Diao,

      Plaintiffs,                                         Case No.:
v.                                                                   Hon.

Anna's House Corporate, LLC,
a Michigan Corporation, and
Josh Beckett, an individual,

      Defendant.

---

Michael L. Pitt (P24429)
Channing Robinson-Holmes (P81698)
Pitt McGehee Palmer & Rivers PC
Attorneys for Plaintiff Alicia Dunlap
117 W. 4th Street, Ste. 200
Royal Oak, MI 48067
(248) 398-9800
Mpitt@pittlawpc.com
Crobinson@pittlawpc.com

Amy V. Doukoure (P80461)
CAIR-MI Legal Fund
Attorney for Plaintiff Aliou Diao
30201 Orchard Lake Road, Suite 260
Farmington Hills, MI 48334
(248) 559-2247
adoukoure@cair.com

---

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND JURY DEMAND**

Plaintiffs, Alicia Dunlap and Aliou Diao (collectively "Plaintiffs"), by and through their attorneys, Pitt McGehee Palmer & Rivers P.C., and CAIR-MI Legal fund, file the following Complaint against Defendants, Anna's House Corporate, LLC and Josh Beckett (collectively "Defendants"), and state as follows:

## JURISDICTION, VENUE, AND PARTIES

1.      The jurisdiction of this Court over this controversy is based on 28 U.S.C. §1331, to enforce the provisions of 42 U.S.C. § 1981.

2.       This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 to address the claims brought under Michigan's Elliott-Larsen Civil Rights Act. MCLA § 37. 2201-2202,

3.      The venue of this Court over this controversy is based on 28 U.S.C. §1391(d). Defendant Anna's House Corporate, LLC ("Anna's House" or "Company") is a Michigan corporation doing business in this judicial district within the meaning of 28 U.S.C. §1391(c) and, accordingly, venue lies in this judicial district.

4.      Defendant Anna's House is a restaurant franchise that markets itself as provider of "unique dishes" comprised of "all-natural, fresh, local, quality ingredients." Anna's House has eight locations in Michigan.

5.     The events giving rise to this cause of action occurred in this judicial district.

6.     Defendant Josh Beckett ("Beckett") is a Caucasian male and the owner and operator of Anna's House.

7.     Plaintiff Alicia Dunlap is a Hispanic female, wife, and mother of two children.

8.     Plaintiff Aliou Diao is a Senegalese American Muslim man, husband and father.

## FACTUAL ALLEGATIONS

9.     In July of 2017, Plaintiff Alicia Dunlap interviewed with the Chief Operating Officer for Anna's House, Robert Newblatt ("Newblatt"), and was offered a temporary position assisting in the opening of the Westland, Michigan Anna's House location.

10.    In October of 2017, Ms. Dunlap began working full-time training as a manager for Anna's House.

11.    In December of 2017, Ms. Dunlap became the General Manager at the Westland, Michigan location.

12.     Plaintiff Aliou Daio began working for Anna's House on or about December 2017 as a Kitchen Manager. Like Ms. Dunlap, Mr. Diao was hired by Anna's House Chief Operating Officer, Robert Newblatt.

13.     As the General Manager, Ms. Dunlap was responsible for staffing the Westland location, scheduling, ordering food and supplies, food quality and standards, service standards, resolving patron complaints, and generally overseeing the operations of the location.

14.     As Kitchen Manager, Mr. Diao was responsible for overseeing the day to day operation of the back of the house, managing kitchen employees, and maintaining quality and food standards.

15.     Mr. Diao worked with and reported to Ms. Dunlap during the term of his employment.

16.     Throughout Ms. Dunlap's employment, she reported to Newblatt.

17.     Newblatt, in turn, reported to Josh Beckett ("Beckett"), the owner and Corporate Executive Officer of Anna's House.

18.     Throughout Ms. Dunlap's employment with Anna's House, she excelled in her position, receiving praise from customers and management alike, and developed the location into one of the most profitable of the eight locations.

4

19.     Mr. Diao received positive performance reviews and feedback from management at Anna's House, and had in fact put in place policies and practices that assisted with keeping food costs low and assisted in increasing the profit margins of the Westland location.

20.     Ms. Dunlap and Mr. Diao were further well-liked by their peers and co-workers.

## Beckett Promoted a Vision for Anna's House Wherein Staff Represented a Homogeneous Mainstream Culture.

21.     Beckett is the owner and operator of Anna's House and integral

22.     Until early 2019, Ms. Dunlap had minimal interactions with Beckett and, instead, received directives from Beckett through Newblatt.

23.     Beckett would often articulate his "vision" for the restaurant to comport with a homogeneous "mainstream culture" which he demonstrated by his strong preference for Caucasian, Christian employees of American descent who are athletically built.

24.     Beckett demonstrated his allegiance to this vision by equating the restaurant's culture to "Disneyland" and even going so far as naming manager Bill Hogan as the "Director of Magic."

**Beckett Carries out his "Vision" for Anna's House by Discriminating Against Non-White and Non-Athletic Appearing Employees.**

25.     In February of 2019, Beckett learned that Ms. Dunlap oversaw two female African American servers who had dyed their hair red (hereafter referred to as "Employee A" and "Employee B").

26.     Beckett consequently sent Ms. Dunlap a text message, on February 4, 2019, reminding her of the company's alleged policy prohibiting employees from appearing at work with "[c]olor dye hair."

27.     Unfamiliar with any such policy prohibiting employees from dying their hair, Ms. Dunlap sought guidance from Newblatt. Newblatt identified Employee A and Employee B and relayed Beckett's view that as the red hair color was not "natural" for "them" the dye violated company policy.

28.     Newblatt further suggested to Ms. Dunlap that she instruct the two servers to remove the red dye from their hair.

29.     Ms. Dunlap asked Newblatt for a copy of the company policy related to hair dye and sought to clarify how to enforce this alleged policy amongst employees, especially as it pertained to the racial aspects of hair coloring. She did not receive a copy of the alleged policy or guidance on its implementation.

30.     Neither Beckett nor Newblatt ever complained to Ms. Dunlap about Caucasian female employees with dyed hair, though several female employees she supervised dyed their hair.

31.     Ms. Dunlap protested the application of this so-called policy to Newblatt saying, **"It's not right to say a black person can't have the same hair dye as a white person."**

32.     Newblatt was indifferent to her protestation and said nothing.

33.     Employee B, in addition to being African American, had a non-athletic build.

34.     When Beckett first learned of Employee B in February of 2019, Beckett and Newblatt began to pressure Ms. Dunlap to terminate Employee B stating that she was not "the right fit" for Anna's House.

35.     Beckett and Newblatt stressed that Employee B, who, as a server, was readily visible to visiting patrons, did not properly "represent" the "culture" of Anna's House and referenced the company's pride in marketing itself as a locale for healthy dishes.

36.     Beckett made frequent remarks that he was promoting a specific "culture" and image at Anna's House and that the staff needed to fit the part.

37.     Remarks made by Beckett and Newblatt led Ms. Dunlap and others to believe that they were targeting Employee B on account of her race and weight.

38.     Ms. Dunlap resisted Beckett's and Newblatt's efforts to terminate Employee B, to their annoyance, and only later terminated Employee B upon later finding just cause based on her performance.

39.     Beckett intended for staff, such as servers, who were visible to patrons, to be Caucasian and athletically built.

40.     In June or July of 2019, Beckett approached a new hire, a thin, blonde, Caucasian woman in her early 20's and remarked, **"You have the right look to be an Anna's House manager."**

41.     Based on the Company's social media, it appears that the management team for Anna's House is comprised of exclusively Caucasian individuals.

42.     Based on the Company's social media, the majority of the people of color employed by Anna's House work in the kitchens where they are hidden from the view of patrons.

43.     Beckett's placement of Company employees of color in the kitchens and Caucasian employees into visible positions as servers, and in management,

was carried out in pursuit of his "vision" for Anna's House to comport with homogeneous "mainstream culture."

### Beckett Carries out his "Vision" for Anna's House by Discriminating Against Non-Christian Employees.

44.     On April 22, 2019, Beckett called Ms. Dunlap and asked if she had an employee working the front counter who wore a "**jihad**." Upon receiving clarification that Beckett, indeed, meant to inquire whether an employee wore a "hijab" in Westland, Ms. Dunlap confirmed the identity of the employee (hereafter referred to as "Employee C") as the stepdaughter of Plaintiff Aliou Diao.

45.     Beckett directed Ms. Dunlap to inform Employee C to remove her hijab when she worked at Anna's House.

46.     **Ms. Dunlap refused to comply with Beckett's directive and explained that Employee C had a religious right to wear her hijab.**

47.     The following day, on April 23, 2019, Ms. Dunlap sent Beckett a text message advising him to speak with an attorney "to make sure any policies we have are legal and ethical."

48.     Upon information and belief, Beckett sought to terminate Employee C for wearing a hijab while at work.

49.     Beckett further directed other General Managers not to hire anyone wearing a hijab.

50.     On or about June 11, 2019, Beckett asked Ms. Dunlap's co-worker (hereafter referred to as "Co-Worker") if Plaintiff Diao, who is a Senegalese Muslim prayed at work.

51.   As a practicing Muslim, Plaintiff Diao is required to pray five times a day at various stages of the day and is often times required to pray during times he was at work at Anna's House.

52.   As an accommodation for Mr. Diao to allow him to pray at the job site, a sign was placed on the office door of the management staff instructing employees to seek assistance from a manager should the employee observe Mr. Diao praying in the office. The office door had a lock on it, and Mr. Diao had a prayer rug inside that allowed him to pray.

53.     Beckett did not inquire as to whether any other individuals prayed at work.

54.     Beckett's inquiry targeted Mr. Diao because he is Muslim.

55.     On or about June 11, 2019, Beckett told Co-Worker that he was thinking of "purging Westland."

56.     Following his June 11th conversation with Beckett, Co-Worker described Beckett as hostile to non-white individuals.

### Ms. Dunlap and Mr. Diao were Terminated on Account of their Ethnicities and Protected Activity

57.     On June 17, 2019, Ms. Dunlap and Mr. Diao were terminated without basis. No reason was provided for their terminations.

58.     Upon information and belief, both Ms. Dunlap and Mr. Diao were replaced with non-Muslim, Caucasian individuals.

59.     Ms. Dunlap's termination was motivated by her race and/or ethnicity and her opposition to discriminatory practices employed by Anna's House.

60.     Mr. Diao's termination was motivated by his race and/or ethnicity and his adherence to religious practices as a Muslim.

### Beckett Has a Record of Expressing Discriminatory Bias

61.     Beckett has expressed discriminatory bias against Muslims, Hispanics, and the LGBTQ community on social media platforms for several years, including expressing support for the following tweets:

   a.   "Our way of life is under threat by Radical Islam . . ."

   b.   "Today @POTUS (President Obama) officially named #Stonewall Inn as a national monument to gay rights. I can't believe how far our country has digressed."

11

    c.  "When you look at Sharia . . . we have people coming & do not kid yourself, that's what they believe"

    d.  "There is only one true God, and He is not the god of Islam."

    e.  "This judge is of Mexican heritage. I'm building a wall."

    f.  "I hope school districts will defy the Obama administration's radical progressive promotion of sin & the LGBT agenda."

    g.  "A nation without borders is not a nation at all. We WILL Make America Safe Again! #AmericaFirst!"

    h.  "We must suspend immigration from regions linked with terrorism until a proven vetting method is in place."

**Defendants Have Engaged in a Pattern of Discriminatory Terminations and Demotions Against Employees Based on Race and Ethnicity**

62.    Anna's House has engaged in a pattern and practice of discriminatory terminations and demotions of managerial employees based on their respective races and ethnicities.

63.    On June 5, 2019, Beckett terminated Kenia Pauuwe ("Pauuwe"), a Hispanic female working as the General Manager at the Holland, Michigan location, without providing a reason.

64.    Two days prior to Pauuwe's termination, Beckett publicly praised Pauuwe on the company's Instagram account saying, "Just want to say how proud we are of our newest GM in Holland, Kenya! She is an incredible leader and her team loves her! Wow, great job Anna's House Team Holland!"

65.     Pauuwe was replaced as General Manager by a Caucasian male.

66.     Upon information and belief, Pauuwe's termination was without cause and motivated by her race and/or ethnicity as a Hispanic female.

67.     Around the same time of Pauuwe's termination, Anita Kaoma ("Kaoma"), an African American female, was demoted from her position as Assistant Manager at the Holland, Michigan location to the position of server.

68.     Based on the totality of circumstances, it is fair to conclude that Kaoma's demotion was without cause and motivated by her race as an African American female.

69.     Around the same time of Pauuwe's termination, Beckett terminated Newblatt.

70.     Newblatt was responsible for hiring several managerial employees of color including Ms. Dunlap and Mr. Diao.

71.     Upon information and belief, Newblatt's termination was motivated by his decisions to hire managerial employees of color including Ms. Dunlap and Mr. Diao.

13

**COUNT I**
**VIOLATION OF 42 U.S.C. § 1981**
**RACE AND ETHNICITY DISCRIMINATION**
**(Plaintiffs v. Defendants)**

72.     Plaintiffs incorporate by reference the allegations set forth above as if stated in full herein.

73.     At all times relevant to this action, Defendants were prohibited under 42 U.S.C. § 1981 from making any employment decisions regarding Plaintiffs which were motivated by Plaintiffs' race and/or ethnicity.

74.     In violation of this duty, Defendants terminated Plaintiffs' employment because of their respective race and/or ethnicity.

75.     The reasons provided for Plaintiffs' terminations were a pretext for race and/or ethnic discrimination.

76.     As a direct and proximate result of Defendants' race and/or ethnic discrimination, Plaintiffs have suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiffs have and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendants.

Accordingly, Plaintiffs request the following relief:

a. An order reinstating Plaintiffs to their former positions or comparable positions after the discriminatory and retaliatory work environments have been corrected.

b. Enjoining Defendants from further retaliation against Plaintiffs.

c. An order awarding Plaintiffs economic and emotional damages, both past and future, in an amount they are found to be entitled to;

d. An order awarding Plaintiffs punitive damages;

e. An order awarding Plaintiffs interest, costs, attorney fees and litigation expenses;

f. An order granting Plaintiffs such other relief as the court deems just and equitable.

**COUNT II**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**RACE/ETHNICITY/NATIONAL ORIGIN DISCRIMINATION**
**(Plaintiffs v. Defendants)**

77.     Plaintiffs incorporate by reference the allegations set forth above as if stated in full herein.

78.     At all times relevant to this action, Defendants were prohibited under the Elliott-Larsen Civil Rights Act ("ELCRA") from making any employment decisions regarding Plaintiffs which were motivated by Plaintiffs' race and/or ethnicity and/or national origin or religion.

79.    In violation of this duty, Defendants terminated Plaintiffs' employment because of their respective race and/or ethnicity and/or national origin.

80.    The reasons provided for Plaintiffs' terminations were pretext for race and/or ethnic discrimination and/or national origin.

81.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiffs have suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiffs have and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendants.

Accordingly, Plaintiffs requests the following relief:

a.  An order reinstating Plaintiffs to their former positions or comparable positions after the discriminatory and retaliatory work environments have been corrected.

b.  Enjoining Defendants from further retaliation against Plaintiffs.

c.  An order awarding Plaintiffs economic and emotional damages, both past and future, in an amount they are found to be entitled to;

d.  An order awarding Plaintiffs interest, costs, attorney fees and litigation expenses as provided for under the ELCRA;

e. An order granting Plaintiffs such other relief as the court deems just and equitable.

## COUNT III
## VIOLATION OF 42 U.S.C. § 1981
## <u>RETALIATION</u>
## (Plaintiff Dunlap v. Defendants)

82.     Plaintiffs incorporates by reference the allegations set forth above as if stated in full herein.

83.     At all times relevant to this action, Defendants were prohibited under 42 U.S.C. § 1981 from retaliating against Plaintiff Dunlap for opposing race and/or ethnic discrimination prohibited by 42 U.S.C. § 1981.

84.     In violation of this duty, Defendant terminated Plaintiff Dunlap's employment in retaliation for Plaintiff's opposition to unlawful race and/or ethnic discrimination.

85.     The reasons provided for Plaintiff's termination were a pretext for unlawful retaliation.

86.     As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff Dunlap has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff Dunlap has and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and

emotional distress resulting from the discriminatory conduct of the Defendants.

Accordingly, Plaintiff Dunlap requests the following relief:

    a.  An order reinstating Plaintiff Dunlap to her former position or comparable position after the discriminatory and retaliatory work environments have been corrected.

    b.  Enjoining Defendants from further retaliation against Plaintiff Dunlap.

    c.  An order awarding Plaintiff economic and emotional damages, both past and future, in an amount she is found to be entitled to;

    a.  An order awarding Plaintiff punitive damages;

    b.  An order awarding Plaintiff interest, costs, attorney fees and litigation expenses;

    c.  An order granting Plaintiff such other relief as the court deems just and equitable.

**COUNT IV**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**<u>RETALIATION</u>**
**(Plaintiff Dunlap v. Defendants)**

87.    Plaintiffs incorporates by reference the allegations set forth above as if stated in full herein.

88.    At all times relevant to this action, Defendant were prohibited under the Elliott-Larsen Civil Rights Act ("ELCRA") from retaliating against

Plaintiff Dunlap for opposing race and/or ethnic and/or national origin discrimination, weight discrimination, and religious discrimination prohibited under the Act.

89.     In violation of this duty, Defendants terminated Plaintiff Dunlap's employment in retaliation for Plaintiff's opposition to unlawful discrimination prohibited under ELCRA.

90.     The reasons provided for Plaintiff's termination were pretext for unlawful retaliation.

91.     As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff has and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendant.

Accordingly, Plaintiff requests the following relief:

a.  An order reinstating Plaintiff Dunlap to her former position or comparable position after the discriminatory and retaliatory work environments have been corrected.

b.  Enjoining Defendants from further retaliation against Plaintiffs.

c.  An order awarding Plaintiff economic and emotional damages, both past and future, in an amount she is found to be entitled to;

d. An order awarding Plaintiff interest, costs, attorney fees and litigation expenses as provided for under the ELCRA;

e. An order granting Plaintiff such other relief as the court deems just and equitable.

**COUNT V**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**<u>RELIGIOUS DISCRIMINATION</u>**
**(Plaintiff Diao v. Defendants)**

92.     Plaintiffs incorporates by reference the allegations set forth above as if stated in full herein.

93.     At all times relevant to this action, Defendants were prohibited under the Elliott-Larsen Civil Rights Act ("ELCRA") from making any employment decisions regarding Plaintiff Diao which were motivated by his religion.

94.     In violation of this duty, Defendants terminated Plaintiff Diao's employment because of his religion and observation of Islamic religious practices.

95.     Reasons provided for Plaintiffs' terminations were pretext for religious discrimination.

96.     As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff Diao has suffered and will continue to suffer lost wages,

and other economic advantages of employment; Plaintiff Diao has and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendants.

Accordingly, Plaintiff Diao requests the following relief:

a. An order reinstating Plaintiff Diao to his former position or comparable position after the discriminatory and retaliatory work environments have been corrected.

b. Enjoining Defendants from further retaliation against Plaintiff Diao.

c. An order awarding Plaintiff Diao economic and emotional damages, both past and future, in an amount he is found to be entitled to;

d. An order awarding Plaintiff Diao interest, costs, attorney fees and litigation expenses as provided for under the ELCRA;

e. An order granting Plaintiff Diao such other relief as the court deems just and equitable.

Respectfully submitted,

PITT, McGEHEE, PALMER & RIVERS P.C.

By:____/s/Channing Robinson-Holmes
       Michael L. Pitt (P24429)
       Channing Robinson-Holmes (P81698)
       Pitt McGehee Palmer & Rivers PC
       Attorneys for Plaintiff Alcia Dunlap
       117 W. Fourth Street, Ste. 200
       Royal Oak, MI 48067
       (248) 398-9800
       Mpitt@pittlawpc.com
       Crobinson@pittlawpc.com


CAIR-MI LEGAL FUND

BY:___/s/ Amy V. Doukoure_____
       Amy V. Doukoure (P80461)
       CAIR-MI Legal Fund
       Attorney for Plaintiff Aliou Diao
       30201 Orchard Lake Road, Suite 260
       Farmington Hills, MI 48334
       (248) 559-2277
       adoukoure@cair.com

DATE: January 30, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Alicia Dunlap and
Aliou Diao,

      Plaintiffs,                     Case No.:

v.                                     Hon.

Anna's House Corporate, LLC,
a Michigan Corporation, and
Josh Beckett, an individual,

      Defendant.

---

Michael L. Pitt (P24429)
Channing Robinson-Holmes (P81698)
Pitt McGehee Palmer & Rivers PC
Attorneys for Plaintiff Alicia Dunlap
117 W. 4th Street, Ste. 200
Royal Oak, MI 48067
(248) 398-9800
Mpitt@pittlawpc.com
Crobinson@pittlawpc.com

Amy V. Doukoure (P80461)
CAIR-MI Legal Fund
Attorney for Plaintiff Aliou Diao
30201 Orchard Lake Road, Suite 260
Farmington Hills, MI 48334
(248) 559-2247
adoukoure@cair.com

---

**JURY DEMAND**

23

Plaintiffs herein demand a trial by jury of all issues to the within cause of action.

Respectfully submitted,

PITT, McGEHEE, PALMER & RIVERS P.C.

By:_____/s/Channing Robinson-Holmes
        Michael L. Pitt (P24429)
        Channing Robinson-Holmes (P81698)
        Pitt McGehee Palmer & Rivers PC
        Attorneys for Plaintiff Alicia Dunlap
        117 W. Fourth Street, Ste. 200
        Royal Oak, MI 48067
        (248) 398-9800
        mpitt@pittlawpc.com
        crobinson@pittlawpc.com

    CAIR-MI LEGAL FUND

BY:___/s/ Amy V. Doukoure_____
        Amy V. Doukoure (P80461)
        CAIR-MI Legal Fund
        Attorney for Plaintiff Aliou Diao
        30201 Orchard Lake Road, Suite 260
        Farmington Hills, MI 48334
        (248) 559-2247
        adoukoure@cair.com

DATE: January 30, 2020

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Alicia Dunlap and Aliou Diao, | Anna's House Corporate, LLC, |

| | |
|---|---|
| **(b)** County of Residence of First Listed Plaintiff  Livingston<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br>Channing Robinson-Holmes (P81698)<br>Pitt McGehee Palmer & Rivers PC<br>117 W. 4th Street, Suite 200<br>Royal Oak, MI 48067  (248) 398-9800 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*  *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☒ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 42 U.S.C. § 1981

Brief description of cause: Race and ethnic discrimination

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE  January 30, 2020

SIGNATURE OF ATTORNEY OF RECORD  s/ Channing Robinson-Holmes

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.**  Place an "X" in one of the six boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.